UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NJISANE CHAMBERS, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 19-cv-11874-DJC |
| ) | |
| MICHAEL RODRIGUES, ) | |
| ) | |
| Respondent. ) | |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                                                          **February 15, 2022**

**I.     Introduction**

Petitioner Njisane Chambers ("Chambers" or "Petitioner") has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 ("Petition"). D. 1. The Superintendent of MCI-Concord ("Respondent") opposes the Petition. D. 7. For the reasons discussed below, the Court DENIES the Petition.

**II.    Standard of Review**

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), when a petitioner raises a claim that was adjudicated on the merits in state court, federal habeas courts must defer to the state court's determination unless it was "contrary to, or involved an unreasonable application of, clearly established Federal law" or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Teti v. Bender, 507 F.3d 50, 56 (1st Cir. 2007) (quoting 28 U.S.C. § 2254(d)).

For the purposes of § 2254(d)(1), federal law is defined as Supreme Court holdings and excludes dicta. White v. Woodall, 572 U.S. 415, 419 (2014). A state court's decision is contrary

1

to clearly established federal law if it "'contradicts the governing law set forth in the Supreme Court's cases or confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court' but reaches a different result." Companonio v. O'Brien, 672 F.3d 101, 109 (1st Cir. 2012) (quoting John v. Russo, 561 F.3d 88, 96 (1st Cir. 2009)). "[A]n unreasonable application of federal law is different from an incorrect application of federal law." Scott v. Gelb, 810 F.3d 94, 101 (1st Cir. 2016) (emphasis omitted) (quoting Harrington v. Richter, 562 U.S. 86, 101 (2011)). Not even clear error will establish an objectively unreasonable conclusion. White, 572 U.S. at 419. Habeas relief is not warranted unless the petitioner has "show[n] that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 562 U.S. at 103.

For the purposes of § 2254(d)(2), any factual determinations made by a state court are "presumed to be correct" unless rebutted by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "[A] decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

### III. Relevant Factual and Procedural Background

The following facts are drawn from the decision of the Massachusetts Appeals Court affirming Chambers's conviction, Commonwealth v. Chambers, 93 Mass. App. Ct. 806 (2018).

#### A. Offense Conduct

The criminal charges against Chambers arise from an altercation that took place outside a Boston nightclub on the night of June 6, 2014. Id. at 807–09. During the altercation, Chambers

stabbed three individuals, and police arrested him at the scene. Id. at 808–09.

### B.      Juror Twelve

#### 1.      Jury Selection

During jury selection for Chambers's trial, Juror Twelve expressed concern that the length of the trial would be a burden, explaining that he was a student at Northeastern University and that serving as a juror would "significantly impact" his course work. Id. at 810. The judge responded that he would not excuse the juror for such reason and stated that the university would support his service as a juror. Id. Juror Twelve agreed and had no further questions. Id. Neither party challenged Juror Twelve's selection. Id.

#### 2.      After the First Day of Trial

After the first day of trial, Juror Twelve sent the judge a note stating: "I believe that the stress of missing school will result in an impartial [sic] decision on my part. I am terrified that I will fail my classes and do not know if I can make a fair decision in the near future." Id. The judge questioned Juror Twelve at sidebar and explained that jury service by college students in the Boston area was common. Id. He informed the juror that students often raise similar concerns and that universities must accommodate students' jury service. Id. When Juror Twelve expressed his continued concern, the judge stated that he wanted Juror Twelve to be "comfortable" with his jury service and instructed him to speak with university officials about available accommodations. Id. Juror Twelve responded that he had already contacted the registrar's office and that he "definitely want[ed] to participate in [his] civic duty." Id. Although he remained concerned, the juror agreed to do as the judge requested. Id.

The next day, Juror Twelve confirmed that the university would accommodate his jury service. Id. at 810–11. The judge asked whether the juror could be fair to the defendant and give

his attention to the judge's instructions and the evidence. Id. at 811. The juror responded, "I would definitely do my best, but I can't promise anything." Id. On further inquiry, Juror Twelve explained that he feared falling behind in his course work but stated that he would "man up" and do his best. Id. At the colloquy's conclusion, the judge told Juror Twelve that he was "a perfect candidate" to ensure a fair outcome. Id. The juror responded, "I simply don't know." Id.

Counsel for Chambers requested that the juror be struck for cause. Id. The judge decided to continue the trial with Juror Twelve seated on the jury, explaining that he would "keep [him] as a work in progress" and assured counsel that he would not keep the juror for deliberation if "he's impaired." Id.

### 3. Before Deliberations

After the jury was instructed but before deliberations, Juror Twelve sent a note to the judge stating: "I believe I may know information that would affect my ability to judge the case based solely on the information received in the trial." Id. at 814. The judge questioned the juror, who clarified that he had not been exposed to outside evidence but had "heard about how the jury actually has more power than [the judge] expressed, that [the jury] can judge not only based on just information, but whether they believe the law is fair, or their personal convictions . . . to judge guilty or not guilty." Id.

The judge explained that this was known as jury nullification, that it was not permitted and that the jury must accept the judge's statement of the law regardless of its agreement with it. Id. The judge asked if Juror Twelve had any questions about his ability to apply the facts as he and the other jurors find them to the law as given to him by the judge, to which the juror responded, "I don't think so." Id. Sensing some hesitancy, the judge again explained the judge and jury's different roles. Id. Juror Twelve agreed with much of the judge's explanation. Id. He then,

however, stated that he did not believe it should be unlawful to possess a small knife. Id. The judge further explained that only some kinds of knives constitute dangerous weapons under Massachusetts law and asked if the juror had any problem applying that law. Id. Juror Twelve responded, "I guess not." Id. Again sensing hesitancy from the juror, the judge instructed the juror to apply the law even if he disagreed with it. Id. at 814–15. The juror began responding that he "thought that the jury had the power to choose whatever way to—" but the judge interrupted and said, "I just told you it doesn't." Id. at 815. The juror said, "Okay." Id.

The judge asked if the juror could apply the law to the elements of the charged offenses as explained by the judge. Id. Juror Twelve replied, "Yes." Id. The judge then "painstakingly went through his other 'major' jury instructions" and asked if the juror had any problem applying them. Id. Juror Twelve said he had no problem. Id. Finally, referencing the issue of jury nullification, the judge asked if the juror could forget about "what other people have told [him]." Id. Juror Twelve agreed that he could, and that he could be fair and honest to his oath. Id. The judge asked if the juror was "all set," and the juror replied that he was and thanked the judge for speaking with him. Id.

After the colloquy, counsel for Chambers renewed his request that Juror Twelve be dismissed and the prosecutor joined the request. Id. In response, the judge explained that the juror's concerns were resolved, that the juror would put aside his personal beliefs and that he was able to serve dispassionately and with full attention to the case. Id. The judge noted counsels' objections but explained that he "went to great pains to give [the juror the] security of being able to be a juror as well as a student, . . . and [the judge did not] find any reason to discharge [the juror] after the colloquy that [they] engaged in." Id. at 815–16.

Prior to deliberations, the judge also issued written findings, which the defendant did not

5

challenge, explaining his denial of the motion to discharge the juror. Id. at 813 n.7. In his written findings, the judge found that, when Juror Twelve returned to the trial after having conferred with the university, the juror was "satisfied that he could continue with his service. The [judge] found that there was no reason to discharge him." Id. at 813. The judge also found that the juror "indicated to the satisfaction of this judge that he would apply the law." Id. at 817 n.12.

    C.    **Conviction and Appeal**

The jury convicted Chambers of three counts of assault and battery by means of a dangerous weapon and carrying a dangerous weapon. Id. at 807. After a separate jury trial, Chambers was also convicted of carrying a dangerous weapon as a second and subsequent offense. Id. Chambers appealed to the Massachusetts Appeals Court, claiming, among other things, that the trial judge abused his discretion by not dismissing Juror Twelve and by denying Chambers's motion for a mistrial. Id. The appeals court affirmed the conviction. Id. Chambers thereafter filed an application for further appellate review in the Supreme Judicial Court, D. 1 at 3–4; Commonwealth v. Chambers, FAR-26384 (Mass. Sept. 17, 2018), which the court denied, Commonwealth v. Chambers, 480 Mass. 1110 (2018).

    D.    **This Petition**

Chambers filed the Petition on September 4, 2019. D. 1. The Petition asserts one ground: that Chambers's Sixth Amendment right to a fair and impartial jury was violated because the judge failed to dismiss a juror who stated unequivocally that he could not be impartial. Id. at 6.

**IV.**     **Discussion**

    A.    **Whether the State Court Adjudication Resulted in a Decision Based upon an Unreasonable Determination of the Facts**

Chambers argues that the state courts' determination of Juror Twelve's impartiality was based upon an unreasonable determination of the facts in light of statements by the juror

6

unequivocally expressing his bias. See D. 2 at 7–13. Chambers points to several statements that he contends indicate bias. See id. Further, he asserts that the trial judge never determined or stated on the record that he was satisfied that Juror Twelve could be fair and impartial. Id. at 13. Chambers, moreover, cites case law to support the proposition that doubts regarding bias must be resolved against the juror. See D. 2 at 10–11, 14; Burton v. Johnson, 948 F.2d 1150, 1158 (10th Cir. 1991).

To determine if a juror should be excluded for bias, a trial judge must assess "whether the juror's views would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'" See Wainwright v. Witt, 469 U.S. 412, 424 (1985) (quoting Adams v. Texas, 448 U.S. 38, 45 (1980)). In a habeas review, the trial court's finding that a juror was impartial is entitled to a presumption of correctness, as is any finding of fact by the state court, 28 U.S.C. § 2254(e)(1), rebuttable only upon a showing of clear and convincing evidence. Id. Accordingly, the petitioner bears the burden to show "the actual existence" of a "positive and decided opinion" in the mind of the juror. Irvin v. Dowd, 366 U.S. 717, 723 (1961) (internal citation and quotation marks omitted. A juror's impartiality is not a "technical conception" for which there exists a clear constitutional test but rather a "state of mind" that must be discerned. Id. at 724–25. Because the determination of impartiality "is essentially one of credibility, and therefore largely one of demeanor," a "trial court's resolution of such questions is entitled . . . to 'special deference.'" Patton v. Yount, 467 U.S. 1025, 1038 (1984) (quoting Bose Corp. v. Consumers Union of United States, Inc., 466 U.S. 485, 500 (1984)); see Wainwright, 469 U.S. at 428–29 (explaining that "determinations of demeanor and credibility . . . are peculiarly within a trial judge's province" as "credibility findings . . . cannot be easily discerned from an appellate record"). Accordingly, "federal habeas review" of an objection to a trial court's ruling

7

on whether to strike a particular juror "must be doubly deferential." White v. Wheeler, 577 U.S. 73, 78 (2015) (citation and internal quotation marks omitted).

Contrary to Chambers's argument, the trial judge did make oral and written findings indicating his satisfaction with Juror Twelve's ability to be fair and impartial. See Chambers, 93 Mass. App. Ct. at 815–16 (noting judge's statement that he did not "find any reason to discharge [the juror] after the colloquy that [they] engaged in"), 813 (noting trial judge's written finding that there was "no reason to discharge" the juror), 817 n.12 (noting trial judge's written finding that the juror "indicated to the satisfaction of this judge that he would apply the law").

Further, the trial judge addressed potential concerns regarding certain of Juror Twelve's statements and engaged in colloquies with Juror Twelve to determine whether the juror could be impartial. Following the judge's colloquy with the juror at the end of the first day of trial, "the juror never again raised his concerns regarding his stress from the length of the trial and its impact on his course load." Id. at 813. Moreover, toward the end of the colloquy before deliberations, Juror Twelve confirmed that he could apply the law to the elements as the judge explained and agreed to be fair and honest to his oath. Id. at 815. The judge ultimately determined that all the juror's concerns had been resolved. Id.

As the appeals court noted, the trial judge "conducted the colloquies, assessed the juror's demeanor, and subsequently credited the juror's statements as being unequivocal." Id. at 813. The appeals court, therefore, concluded that the judge "addressed the juror's initial uncertainty competently by asking probing questions designed to clarify the juror's position." Id. at 816. (internal citation and quotation marks omitted). The court deferred to the trial judge's decision not to dismiss the juror "because [the judge] had the opportunity to observe [the juror's] demeanor while he questioned [the juror] at some length, and because [the juror's] answers to his probing

questions allayed any concerns he might have had." Id. at 816–17 (citation and internal quotation marks omitted).

The appeals court reasonably deferred to the judge's determination of the juror's impartiality, given the "special deference" afforded to trial judges in making such credibility findings. See Patton, 467 U.S. at 1038; see also Scott, 810 F.3d at 101. Chambers cannot show that the appeals court's determination of the facts "was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement." See Harrington, 562 U.S. at 103.

Accordingly, the state court adjudication of Chambers's claim did not result in a decision based upon an unreasonable determination of the facts.

### B. Whether the State Court Adjudication of Chambers's Claim Was Contrary to, or an Unreasonable Application of, Clearly Established Federal Law

Chambers argues that the appeals court's decision unreasonably applied clearly established federal law where it gave deference to the trial judge who, Chambers contends, never determined that Juror Twelve could be fair and impartial. D. 2 at 14. Chambers points to Supreme Court precedent that the seating of any juror who should have been dismissed for cause requires reversal, United States v. Martinez-Salazar, 528 U.S. 304, 316 (2000), and that "[i]n exercising its discretion, the trial court must be zealous to protect the rights of an accused," Dennis v. United States, 339 U.S. 162, 168 (1950).

The appeals court's deference to the trial court, however, constituted a reasonable application of clearly established federal law, which accords substantial deference to trial court determinations of impartiality. The appeals court's decision did not "contradict[] the governing law set forth in the Supreme Court's cases," see Companonio, 672 F.3d at 109, which make clear that a "trial court's resolution of . . . questions [of credibility and demeanor] is entitled . . . to 'special deference,'" Patton, 467 U.S. at 1038 (quoting Bose Corp., 466 U.S. at 500); see

9

Wainwright, 469 U.S. at 428–29.  Considering the whole of the trial judge's colloquies with Juror Twelve and the judge's written findings regarding same, Chambers fails to satisfy his burden to show the actual existence of a decided opinion in the mind of the juror.  Each of the statements quoted by Chambers was followed by colloquy and clarification by the judge and juror that "fairminded" jurists could conclude as supporting a finding of impartiality.  See Harrington, 562 U.S. at 102–03; see also Chambers, 93 Mass. App. Ct. at 815 (stating that Juror Twelve confirmed that he could apply the law to the elements as the judge explained and agreed to be fair and honest to his oath).  Moreover, to the extent that Chambers argues Juror Twelve did not unequivocally state that he could be impartial, such is not required by federal law.  See Foster v. Massachusetts, No. CIV.A. 02-10946-GAO, 2003 WL 21696216, at *1 (D. Mass. Apr. 11, 2003) (explaining that while a principle requiring an "unequivocal statement of impartiality" may exist under Massachusetts law, such is "not 'clearly established' under any decision of the Supreme Court").

Further, Chambers argues that the state court adjudication was contrary to clearly established federal law, D. 2 at 13–15, citing cases in which the Supreme Court discussed the use of voir dire as a means of assessing bias, see, e.g., Mu'Min v. Virginia, 500 U.S. 415, 431 (1991); McDonough Power Equip., Inc. v. Greenwood, 464 U.S. 548, 554 (1984); Smith v. Phillips, 455 U.S. 209, 215–17 (1982). D. 2 at 15.  Chambers, however, fails to show that the appeals court's decision "'confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court' but reaches a different result," see Companonio, 672 F.3d at 109 (quoting John, 561 F.3d at 96), as he does not identify any Supreme Court decision involving facts materially indistinguishable from those at issue here.  See generally D. 2.

Accordingly, the state court adjudication of Chambers's claim was not contrary to, or an unreasonable application of, clearly established federal law.

V.  **Conclusion and Certificate of Appealability**

For the foregoing reasons, the Court DENIES the Petition, D. 1.

Chambers may receive a certificate of appealability only if he "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A certificate of appealability is appropriate when "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Miller-El, 537 U.S. at 338 (internal quotation marks omitted). If Petitioner seeks a certificate of appealability, the Court gives Petitioner until March 15, 2022 to file a memorandum addressing the issue of whether a certificate of appealability is warranted as to the Petition.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge